MORGAN, LEWIS & BOCKIUS LLP
Charles J. Malaret, Bar No. 144001
charles.malaret@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Jeffrey S. Raskin, Bar No. 169096
jeffrey.raskin@morganlewis.com
Bakari E. Ziegler, Bar No. 343718
bakari.ziegler@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Tyler F. Allen, Bar No. 24126558
tyler.allen@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel:    +1.713.890.5000
Fax:    +1.713.890.5001
Appearance *pro hac vice*

Attorneys for Plaintiff
*LMC VINEYARDS, LLC*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LMC VINEYARDS, LLC,<br><br>            Plaintiff,<br><br>    vs.<br><br>ALLIED WORLD NATIONAL ASSURANCE COMPANY,<br><br>            Defendant. | Case No. 3:24-cv-03357-TLT<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**Hon. Trina L. Thompson** |

## I. General

1. Plaintiff LMC Vineyards, LLC and Defendant Allied World National Assurance Company (collectively the "Parties") shall take reasonable steps to comply with the procedures set forth in this Stipulation.

2. To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

3. This Stipulation governs the production of discoverable documents by the Parties during the litigation.

4. Protected Material: Protected Material shall refer to any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other privacy obligations. Protected Material constitutes highly sensitive materials requiring special protection.

5. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

6. If there is a dispute concerning the scope of a Party's preservation or collection efforts, before initiating discovery about preservation, collection or review, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information.

## II. Liaison

The parties agree they will identify liaisons to each other who are and will be

knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The liaisons may confer about ESI and to help resolve disputes as appropriate, and the Parties, at their election may allow such conferences to occur without the presence of counsel.

### III. Preservation

1. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

2. The Parties agree that data, including Protected Material, should be preserved for only the time for which this litigation is pending or is reasonably anticipated.  All Protected Material shall be maintained and or destroyed pursuant to normal business practice and/or local Data Protection Laws at the completion of this litigation.

### IV. Search

Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1. List of records custodians;
2. Search methodology to be applied, including, but not limited to, search terms and date restrictions;
3. Location of relevant data sources including custodial and non-custodial;
4. Collection from data sources that are not reasonably accessible or overly burdensome to collect; and
5. Access to Protected Material and the means by which the Parties agree to preserve and collect relevant, unique, non-personal information.

Search Methodology:

1. Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party. The Parties acknowledge and agree that there may be exigent circumstances that make collection of certain types of documents (e.g., hard copy documents) overly burdensome if not impossible and therefore not reasonably accessible.

2. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

## V.     Production Format – Hardcopy

At the Producing Party's discretion, hardcopy documents should be scanned into PDF format. The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided to the Receiving Party.

The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**VI.     Production Format – Electronically Stored Information**

Unless specifically addressed elsewhere in this protocol, electronically stored information ("ESI") should be produced as PDFs with the exception of audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format.

Images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, PDF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

If a document is produced in native format, a single-page Bates-stamped PDF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except when producing redacted images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents requested in native format require redactions and reasonably cannot be produced in PDF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant

to this paragraph or to the extent records do not easily conform to native or PDF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

Each Party reserves the right to request native versions of electronic documents (except for the file types identified herein which must be produced natively) or documents that originated in color that are difficult to review or understand when produced in the format specified herein. No Party will unreasonably deny any such request made according to the following protocol:

- The Requesting Party shall make any such request as soon as reasonably practicable after receiving a document production.

- The Requesting Party shall provide a list of Bates numbers of the documents and the reason that it is requesting to be produced in native format.

- Within fourteen (14) days of receiving such a request, the Producing Party will either (i) produce the requested native files to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

- If the Parties are unable to agree as to the production of the requested documents in native or color format, either Party may submit the matter to the Court.

- Wholesale or categorical requests by category or file type are deemed invalid.

If particular documents warrant a TIFF images and load file format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## VII. Previously Collected and Produced Data

The Parties agree that there is no obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation. This includes not requiring either Party to reproduce productions in the production format outlined in this ESI Stipulation. This provision does not impact the Parties' obligations to disclose documents under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5    3:24-CV-03357-TLT

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Rule 26(a), or to limit the Parties' duties to provide discoverable information under the Federal Rules of Civil Procedures, Local Rules and any other applicable rules, laws, or orders.

**VIII.    Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents**

In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped PDF image slip-sheet containing the text stating the document has been withheld as non-responsive. When producing responsive attachments, the parent email will be produced, regardless of responsiveness, unless otherwise protected from disclosure.

**IX.    Production – Receipt and Storage of Protected Material**

The recipient of any Protected Material shall exercise the same care with regard to the storage, custody, or use of such Protected Material as they would apply to their own material of the same or comparable sensitivity, but no less than the reasonable precautions set forth in this paragraph. The recipient must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration and destruction. Such measures shall include:

(a)    Reasonably preventing unauthorized persons from gaining access to Protected Material (physical access control);

(b)    Reasonably preventing Protected Material from being used without authorization (logical access control) including, but not limited to, the use of passwords;

(c)    Reasonably ensuring that persons entitled to use Protected Material gain access only to such Protected Material as they are entitled to access in accordance with their access

rights, and that, in the course of processing or use and after storage, Protected Material cannot be read, copied, modified or deleted without authorization (data access control);

(d) Reasonably ensuring that the Protected Material cannot be read, copied, modified or deleted without authorization during electronic transmission, transport or storage on storage media, and that the target entities for any transfer of Protected Material by means of data transmission facilities can be established and verified (data transfer control);

(e) Reasonably ensuring the establishment of an audit trail to document whether and by whom Protected Material have been entered into, modified, or removed from Protected Material processing systems, (entry control).

(f) Reasonably ensuring that the Protected Material is processed solely in accordance with instructions from Counsel or Receiving Party (control of instructions).

(g) The Receiving Party shall not load, import, submit, or otherwise transfer documents or data produced by the Producing Party to a publicly accessible Large Language Model ("LLM") or Artificial Intelligence ("AI") platform. LLM or AI platforms may be utilized with industry standard data security provisions and the Party has ensured the documents or data will not be utilized to train public models or otherwise made accessible to other users of the LLM or AI platform.

(h) If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

1. Promptly provide written notice to Producing Party of such breach within twenty-four (24) hours of the discovery of the breach.

2.  Investigate and make reasonable efforts to remediate the effects of the breach, and provide Producing Party with assurances that such breach shall not recur.

3.  Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Requesting Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

4.  The Requesting Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access and/or correct the breach.

## X.  Production Format - Structured Data

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.  This provision does not impact the Parties' obligations to disclose documents under Rule 26(a), or to limit the Parties' duties to provide discoverable information under the Federal Rules of Civil Procedures, Local Rules and any other applicable rules, laws, or orders.

## XI.  Processing and Other Specifications

1.  On-Site Inspections: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

2.  Bates Numbering and Confidentiality Designations: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed

number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document.  Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique, sequential and maintains a constant length across the entire document production.  If a Bates number of set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

        3.       ESI Date and Time Processing: Each Party's ESI should be processed using a consistent Time Zone for all data.  The Party shall share the Time Zone selected for processing of its data with the other Party.

        4.       Global or Horizontal Deduplication:  Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

        5.       Email Thread Suppression:  Each Party may also thread suppress e-mails in such a way as to eliminate lesser inclusive chains, and produce only the most complete iteration or most inclusive version of an e-mail chain.  This includes production of any lesser inclusive chain with an attachment that is unique to the attachment in the most complete iteration or most inclusive version of that email chain.  If a Party elects to produce only the most inclusive email chain, the Parties shall meet and confer if a Receiving Party requests production of a lesser-inclusive email chain.  No Party will unreasonably deny any such request made according to the following protocol:

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- The Requesting Party shall make any such request as soon as reasonably practicable after receiving a document production.

- The Requesting Party shall provide a list of Bates numbers of the documents and the reason that it is requesting lesser-inclusive email chains.

- Within fourteen (14) days of receiving such a request, the producing Party will either (i) produce the requested lesser-inclusive email chains to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

- If the Parties are unable to agree as to the production of the requested lesser-inclusive email chains, either Party may submit the matter to the Court.

- Wholesale or categorical requests by category or file type are deemed invalid.

6. **Embedded Objects:** Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

7. **Compressed Files:** Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

8. **Redactions:** The Producing Party can redact documents for privilege or otherwise Protected Material, non-responsive content within a responsive document, and "Personally Identifiable Information," "Sensitive Private Data," or "Nonpublic Personal Information" as these terms are defined under federal, state or foreign data protection laws. The Parties may, at their own expense, apply redactions to non-responsive highly sensitive or confidential data within relevant documents. If, during the course of discovery, the Parties identify other kinds of

information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties will seek resolution from the Court.

When a document is redacted, the document will be produced in PDF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to PDF or is not reasonably usable when converted to PDF format, the Producing Party can redact in native format). The PDF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

If, during the course of litigation, a data subject with privacy rights pursuant to the Data Protection Laws identified herein exercises his or her right to erasure of personal data contained within the previously produced Protected Material, the Producing Party shall furnish newly redacted versions of the Protected Material within a reasonable time. The Requesting Party will promptly destroy the original version of the Protected Material and replace it with the redacted version. The Producing Party may also require the entire document destroyed and replaced with a slip-sheet indicating the Protected Material is subject to erasure pursuant to the applicable Data Protection Law.

9.  **No Designation of Discovery Requests:** Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

10. **Foreign Language Documents:** A Producing Party shall produce all foreign language documents and ESI in the original language. The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

## XII. Rolling Productions

The Parties understand that this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the

Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' Federal Rule of Evidence 502(d) obligations, and other obligations pursuant to the Stipulated Protective Order entered in this case.

**XIII.   Third Party Documents**

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein, or will otherwise confer in good faith to agree with the opposing Party/ies regarding the specifications of the non-Party's production.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

**XIV.   No Effect on Discovery or Admissibility**

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

### XV. Authenticity

A document produced in this litigation shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used. Extracted text files shall not be used in any proceeding as a substitute for the image of any document. This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

### XVI. Discovery Deficiency

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

### XVII. Privilege and Privilege Logs

1. The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from outside legal counsel for Defendants; (b) communications from inside counsel, (c) communications to inside counsel where inside counsel is the only recipient or is related to this litigation, (d) work product of counsel and parties, (e) any internal communications within a law firm, (f) any communications regarding litigation

holds or preservation, collection, or review in this or any Litigation and (g) any communication or document that post-date the filing of the complaint.

2. The Parties agree that redacted documents do not need to be included on the privilege log.

3. In an effort to avoid unnecessary expense and burden associated with traditional "document by document" privilege logs, the Parties agree that for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing for each document (except those exempted above) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include, at a minimum, the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE
- HASH (MD5 OR SHA-1)

- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

4.  The Parties further agree that this summary log satisfies the Producing Party's obligations under Federal Rule of Civil Procedure 26(b)(5).

5.  If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within thirty (30) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

6.  The Parties shall enter into a separate agreement with respect to the logging of hard-copy privileged documents, to the extent such documents exist.

**XVIII. Production of Privileged Material**

1.  No Waiver by Disclosure. This order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if a Party or subpoenaed nonparty (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Privileged Information"), the disclosure of that Privileged Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal or state action – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter. This

Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

2.       Notification Requirements; Best Efforts of Receiving Party. A Disclosing Party must promptly notify the Party receiving the Privileged Information ("the Receiving Party"), in writing, that it has disclosed that Privileged Information without intending a waiver by the disclosure. Upon such notification, the Receiving Party must – unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Privileged Information and any reasonably accessible copies it has and (ii) provide a certification that it will cease further review, dissemination, and use of the Privileged Information. Within five business days of receipt of the notification from the Receiving Party, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.

3.       Contesting Claim of Privilege or Work Product Protection. If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must – within five business days of receipt of the notice of disclosure – move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion, as it contains information that Disclosing Party believes is privileged, should be filed with the Administrative Motion to Consider Whether Another Party's Material Should Be Sealed as referenced in Civil Local Rule 79-5(f). The Parties acknowledge the effect of Local Rule 79-5, and this Agreement does not purport to affect the Court's authority thereunder. Pending resolution of the Disclosure

Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

4. Stipulated Time Periods. The Parties may stipulate to extend the time periods set forth in paragraphs (b) and (c).

5. Attorney's Ethical Responsibilities. Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

6. Burden of Proving Privilege or Work-Product Protection. The Disclosing Party retains the burden – upon challenge pursuant to paragraph (c) – of establishing the privileged or protected nature of the Protected Information.

7. *In camera* Review. Nothing in this Order limits the right of any Party to petition the Court for an *in camera* review of the Privileged Information.

8. Voluntary and Subject Matter Waiver. This Order does not preclude a Party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

9. Review. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete its review should it choose to do so.

10. **Proportionality.** Nothing contained herein is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

11. **Rule 502(b)(2).** The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: December 13, 2024    */s/ Charles J. Malaret*
                                                            Counsel for Plaintiff

Dated: December 13, 2024    */s/ Teri Mae Rutledge*
                                                            Counsel for Defendant

ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)

I, CHARLES J. MALARET, am the ECF user whose identification and password are being used to file this **[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**. Pursuant to Local Rule 5-1(i)(3), I hereby attest that Teri Mae Rutledge has concurred in this filing.

DATED: December 13, 2024            */s/ Charles J. Malaret*

**PURSUANT TO STIPULATION, IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

UNITED STATES DISTRICT JUDGE